UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LARON ANTHONY ROSS, JR., | ) | |
| | ) | |
| plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:04-cv-0550 AS |
| | ) | |
| MARK SWISTEK, THORPE, | ) | |
| LOGWOOD, JORDAN, and | ) | |
| ATLEY C. PRICE, | ) | |
| | ) | |
| defendants. | ) | |

*MEMORANDUM, OPINION AND ORDER*

LaRon Ross filed a complaint under 42 U.S.C. § 1983, alleging that the defendants intentionally allowed him to be attacked and injured by other inmates while he was confined at the LaPorte County Jail in 2003. The court granted Mr. Ross leave to amend his complaint to substitute dates and correct the spelling of one of the defendants' names. Because the substituted dates were beyond the two year statute of limitations, the defendants successfully moved to dismiss the complaint. Mr. Ross filed a notice of appeal and moved for relief from judgment, asserting that he made a mistake when he moved to amend his complaint and that the second set of dates he provided were wrong. This court notified the court of appeals that if it remanded the case for the purpose of ruling on the motion for relief from judgment, this court would grant the motion. The court of appeals dismissed the appeal, and this court granted the plaintiff's motion to reopen the case.[1]

---

[1] The parties are now in agreement that the dates the plaintiff submitted in his motion to amend by interlineation were wrong and that the events he complains of occurred within the statute of limitations.

Mr. Ross moved to amend his complaint after the court granted his motion to amend by interlineation, but the court denied his requests because the judgment dismissing the case had not yet been vacated. After it reopened the case this court afforded the parties time within which to file amended pleadings, but none were filed. Accordingly, this case is before the court on the plaintiff's original complaint as amended by interlineation. The defendants are Deputy Prosecutor Atley Price, Michigan City police officer Mark Swistek, and Laporte County Jail officials Jordan, Thorpe, and Logwood. The defendants have filed motions for summary judgment pursuant to FED R. CIV. P. 56, and Mr. Ross has responded.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 324.
> . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996).

Mr. Ross alleges that to escape prosecution for his own drug offenses, he became a confidential informant for the LaPorte Prosecutor's office and the Michigan City Drug Task Force. He states in his complaint that after performing in this capacity for a while he

2

believed his activities may have become known to the community, creating some personal risk to him. As a result he states that he decided to resign his position. He alleges that Deputy Prosecutor Atley Price wished him to continue as a confidential informant, and told him that if he did not, he would be placed in jail with Turner and Daniels, two of the persons against whom he had already provided information. Mr. Ross asserts that because he continued to refuse to provide further information, he was arrested on drug charges and placed in jail with Turner and Daniels, who immediately stabbed and beat him. In his complaint, he alleges that when he appeared in court to be arraigned on the drug charges against him, defendant Price said "I told you that I'll keep my promise."

Mr. Ross was at the jail as a pretrial detainee when he alleges Turner and Daniels attacked him. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Robinson v. Moses*, 644 F.Supp. 975 (N.D. Ind. 1986). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause, *Bell v. Wolfish*, 441 U.S. at 535 n. 16. But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988).

"Officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833, *quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. at 834. Deliberate indifference in such circumstances is defined as "criminal recklessness," *Farmer v. Brennan*, 511 U.S. at 839-840.

Deliberate indifference is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), *citing* 944 F.2d 344, 347 (7th.Cir. 1991). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. at 836. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1986).

The question before the court is whether the defendants, or any of them, were responsible for placing Mr. Ross in a portion of the jail where Turner and Daniels were housed, believing that it was likely they would attack him. In support of their summary judgment motion, defendants Jordan, Logwood, and Thorpe submit the plaintiff's deposition. In support of his motion for summary judgment, Detective Swistek submits his affidavit and portions of Mr. Ross's deposition. Defendants Price and Swistek argue that they had no involvement in the decision to place Mr. Ross in the same cellblock as Turner and Daniels. Defendants Thorpe, Logwood, and Jordan, who are all jail employees, argue that they were not involved in determining where Mr. Ross would be housed, and were not aware that Turner and Daniels posed a threat to him. Mr. Ross submits his own affidavit in which he states his version of events.

## DEFENDANT PRICE

Defendant Price does not submit an affidavit or declaration in support of his summary judgment motion. He argues in his memorandum that, as a matter of law, he was

not involved in assigning Mr. Ross to a particular unit at the LaPorte County Jail because the Sheriff is responsible for operating the jail, and housing assignments are made by jail officials.

      Mr. Ross states in his deposition and his affidavit that he met with defendant Price on February 14, 2003, and that as part of his effort to convince Mr. Ross that he should continue his career as a confidential informant, defendant Price told Mr. Ross that "I know you can go and set someone else up. If not, you're going to jail," or, "Do you want to go to jail?" "You knoe, 'We will put you in a cell with Turner and Daniels if you don't'" continue as a confidential informant. (Ross deposition at p. 56). Mr. Ross further stated that Mr. Price told him that "if you don't set someone up, I will make you a promise that you will go to prison, and you will go to the county jail in the cell with Turner and Daniels. Now Talk." (Ross deposition at p. 58). According to Mr. Ross, when he continued to resist resuming his confidential informant activities, he was placed in handcuffs and taken to the LaPorte County Jail on drug charges. Mr. Ross states that defendant Price's "final comment" to the officers who escorted him out of the room was "(t)ake him to the LaPorte County Jail and put that M.F. in the cell with Turner and Daniels." (Ross deposition at p. 80). According to Mr. Ross's deposition, immediately after being booked into the jail, he was taken to the cell block where Turner and Daniels were housed and within five minutes, before he even got to his cell, Turner and Daniels attacked him.

      Mr. Price relies on the general principle of Indiana law that the County Sheriff and his subordinates operate the jail and assign inmates to cell blocks. While this is true, as a general principle, it does not address Mr. Ross's claim that defendant Price threatened to have Mr. Ross placed in a portion of the jail where Turner and Daniels could get at him, and the possibility that he used his influence as a deputy prosecutor to cause the threat to

5

be borne out when Mr. Ross persisted in his plan to cease confidential informing.

Mr. Price has not submitted an affidavit contesting having made the statements Mr. Ross attributes to him in the complaint and in his deposition and affidavit, nor has he stated that he made no effort to influence where Mr. Ross was housed in the jail. Mr. Ross's deposition and affidavit create disputed issues of material fact as to whether defendant Price might have influenced his housing assignment at the jail.

If Mr. Price made the statements attributed to him by Mr. Ross in his sworn statements — which defendant Price does not deny, and which the court must accept as true at the summary judgment stage in any event — a reasonable jury could conclude that Mr. Price wanted to punish Mr. Ross for dropping out of the confidential informant program and that some member of the Sheriff's Department may have acceded to the statement Mr. Price allegedly made to the officers who took Mr. Ross out of the February 14 meeting that Mr. Ross should be placed with Turner and Daniels. Summary judgment is not the procedure to determine which facts are true: the court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586.

## DEFENDANT SWISTEK

Detective Mark Swistek asserts in his summary judgment motion that there is no evidence that he had any direct personal involvement in the placement of Mr. Ross in Cellblock 5C. He argues that he is not a jail official, but merely a police officer who conducted the initial narcotics investigation against Mr. Ross.

Mr. Ross concedes in his deposition that Detective Swistek was not present at the

meeting in which Mr. Price allegedly expressed a desire for Mr. Ross to be housed at the jail with Turner and Daniels. Detective Swistek submits an affidavit in which he states that he was not involved in transporting Mr. Ross to the jail, that he had no contact with the jail officers who took custody of him, that he never informed anyone that Mr. Ross had been a confidential informant, and that he had no involvement in assigning Mr. Ross to a cell at the jail. (Swistek affidavit ¶¶ 4-8). In response, Mr. Ross states in his deposition that when he told defendants Logwood and Thorpe, who were escorting him to the cellblock, that he would have a problem if housed with Turner and Daniels, they responded that they were putting him where Detective Swistek said to put him. (Ross deposition at p. 94-98). The statements Mr. Ross attributes to defendants Logwood and Thorpe raise an inference that Detective Swistek may have influenced his cellblock assignment.

Summary judgment is not the procedure to determine which facts are true: the court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586. Determinations of credibility are for the jury, and this court cannot say that a rational jury could not conclude from the statements attributed to Detective Swistek that he may have influenced Mr. Ross's initial housing assignment at the jail.

### DEFENDANTS JORDAN, THORPE, AND LOGWOOD

Jail Commander Jordan and Custody Officers Thorpe and Logwood argue that they were personally involved in deciding where Mr. Ross would he housed within the jail and that they were unaware that Turner and Daniels posed a threat to him. They further state In their memorandum in support of their motion for summary judgment that Mr. Ross

7

"failed to provide sufficient evidence to prove the existence of any of the allegations contained in his Complaint/Amended Complaint and by his own testimony, has refuted or contradicted many, if not all of his allegations against said Defendants." (Docket # 96 at pp. 21-22).

To establish a jail official's liability in a failure to protect case, a prisoner "must establish that the official knew of the risk (or a high probability of the risk) and did nothing . . .. Mere negligence (for example if a prison guard <u>should</u> know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment. It is also not sufficient to show that the prison guard merely failed to act reasonably." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996), *citing Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995).

Mr. Ross concedes in his deposition that when he was booked into the jail he did not inform the booking officers that he felt he was in danger of being attacked by anyone at the jail (Ross deposition at p. 95), and he does not allege that defendants Thorpe, Logwood, and Jordan were responsible for assigning him to the housing unit where Turner and Daniels were confined. Accordingly, these defendants are only liable if they became aware after Mr. Ross was assigned to Cellblock 5C that placing him in a housing unit with Turner and Daniels would pose a threat to his safety.

According to Mr. Ross's deposition and his affidavit, while Officers Thorpe and Logwood were escorting him to his housing unit, he told them that he should not be housed with Turner and Daniels because he was a confidential informant who had provided information against them. (Ross deposition at pp. 95-96). Accordingly, there is admissible evidence from which a reasonable jury could conclude that Mr. Ross placed

these defendants on notice that Turner and Daniels posed a threat to his safety.

The defendants argue that statements Mr. Ross made in his deposition about what he thought during the few minutes between the time he was placed in the cellblock and the time Turner and Daniels attacked him establish that he did not believe Turner and Daniels were a threat to him. But a reasonable factfinder could also conclude from these statements that Mr. Ross still believed Turner and Daniels posed a threat to him, but was hoping he was wrong. He also testified that he initially hoped that the officers' alleged statement that they were putting him where Detective Swistek told them meant that he was going to be housed separately from Turner and Daniels. At the summary judgment stage, the court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586. Giving Mr. Ross the benefit of the inferences to which he is entitled as the non-moving party the court cannot say that a reasonable jury could not conclude that defendants Thorpe and Logwood were aware that Turner and Daniels were in Cellblock 5C, and that placing Mr. Ross with them could pose an immediate threat to his safety.

Mr. Ross's deposition and affidavit, however, contain no evidence from which a finder of fact could conclude that Mr. Ross placed defendant Jordan on notice that housing him with Turner and Daniels would expose him to a substantial risk of serious harm. Accordingly, defendant Jordan is entitled to summary judgment.

For the foregoing reasons, the court:

(1) **DENIES** defendant Swistek's motion for summary judgment (docket #98);

9

(2)  **DENIES** defendant Price's motion for summary judgment (docket #100); and

(3) **GRANTS** defendants Jordan, Logwood, and Thorpe's motion for summary judgment (docket #95) in part and **DENIES** it in part. The court **GRANTS** summary judgment to defendant Jordan, and **DENIES** summary judgment to defendants Logwood and Thorpe.

**IT IS SO ORDERED.**

**ENTERED**: September 20, 2007

                                              S/ ALLEN SHARP
                              **ALLEN SHARP, JUDGE**
                              **UNITED STATES DISTRICT COURT**